**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 2:22-CR-00317** |
| | § | |
| **JOHNATHAN SAMUEL BORDEN** | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Johnathan Samuel Borden, having previously been convicted of a felony, is under indictment for knowingly possessing a firearm and ammunition in and affecting interstate commerce.[1]  (Dkt. No. 1).  Pending before the Court is Defendant's Motion to Suppress.  (Dkt. No. 19).  The Government filed its Response, (Dkt. No. 22), and the Court held an evidentiary hearing.  *See* (Dkt. No. 24); (Dkt. No. 25); (Dkt. No. 26).  After reviewing the Motion, the Response, the record, and the applicable law, the Court **DENIES** Defendant's Motion, (Dkt. No. 19).

I.     **BACKGROUND**

A.     **FINDINGS OF FACT[2]**

On September 23, 2021, Officers Buckelew, Guzman, and Huskey of the Corpus Christi Police Department were dispatched to the intersection of Highland Avenue and Hibiscus Street to respond to reports of a man, later identified as Borden, running erratically in and out of the street.  (Dkt. No. 19 at 2); (Dkt. No. 22 at 1).  Upon arriving on the scene, the Officers approached Borden, who was wearing a backpack and slurring his

---

[1]     18 U.S.C. §§ 922(g)(1), 942(a)(2).

[2]     The Court makes the following factual findings for the sole purpose of this Memorandum Opinion and Order.

speech.  (Dkt. No. 19 at 2).  The Officers helped Borden sit down on the sidewalk, and repeatedly asked him if he had taken any medication or used any drugs.  (Dkt. No. 22 at 1–2).  Officer Buckelew, who had been trained in dealing with mental health crises, requested emergency medical personnel to the scene to evaluate Borden.  (*Id.* at 2); (Tr. at 43:15–44:8).  At some point during this interaction, Borden was handcuffed.  (Dkt. No. 19 at 2); (Dkt. No. 22 at 2).  After Borden was handcuffed, Officer Buckelew asked Borden if she could search his backpack, to which Borden did not clearly respond.  (*Id.*).  Officer Buckelew began thoroughly searching Borden's backpack, and she eventually discovered a 9mm handgun.  (Dkt. No. 19 at 3); (Dkt. No. 22 at 2).  Borden was charged with one count of knowingly possessing a firearm or ammunition having previously been convicted of a felony offense in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (Dkt. No. 22 at 2).

### B. PROCEDURAL HISTORY

On September 19, 2022, Borden filed the pending Motion, arguing to suppress all evidence obtained from the search incident to his arrest.  (Dkt. No. 19).  The Court held an evidentiary hearing on October 26, 2022.  The Government presented testimony from Officers Guzman and Buckelew.  (Tr. at 16:9–70:11).  The Government placed three exhibits into evidence.  Two of the exhibits were body camera footage from Officers Guzman and Buckelew.  (Dkt. No. 26).  The third exhibit was an excerpt from the Corpus Christi Police Department's policy and procedures.  (Dkt. No. 26-1).

## II.    ANALYSIS

Borden moves to suppress the firearm discovered during the search of his backpack.  In support, he argues that this Court should extend the United States Supreme Court's holding in *Arizona v. Gant*, which held that the search of a vehicle incident to a lawful arrest is valid if the arrestee is "unsecured and within reaching distance" of the car's compartments at the time of the search.  (Dkt. No. 19 at 8) (citing *Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009)).  Borden asserts that the search of his backpack was improper under *Gant,* because he was handcuffed, and as a result, the backpack was neither within reach nor his immediate control.  (*Id.*).

The Government responds that the Fifth Circuit has never applied *Gant* to a search that occurred outside of a vehicle, and this Court should not so extend the *Gant* holding. (Dkt. No. 22 at 3).  Further, the Government argues that the Officers were permitted to conduct a lawful search incident to arrest, and even if the search was unlawful, the inevitable discovery doctrine would have resulted in the firearm's discovery.  (*Id.* at 3–6). This is because the Corpus Christi Police Department's inventory policy allows property, such as handbags, to be inventoried, which would inevitably have led to the discovery of the firearm in this case.  (*Id.* at 5); (*See* Dkt. No. 26-1 at 4).

At the evidentiary hearing, Borden argued that the search was illegal because no valid arrest had occurred.  (Tr. at 15:10–12).  Further, Borden asserted that any arguments related to inevitable discovery fail because a lawful arrest is a prerequisite to a lawful inventory search.  (Tr. at 15:16–17).  The Government maintained that there are multiple exceptions to the Fourth Amendment warrant requirement that apply in this case.  (Tr. at

3

7:15–20).  The Government argues that one of the applicable exceptions to the Fourth

Amendment warrant requirement is an "emergency search based on the circumstances."

(Tr. at 9:2–3).  The Government elicited testimony from Officer Buckelew that she was

concerned for Borden's safety, and that she searched his backpack to find information,

such as any medication he consumed, to relay to medical personnel.  (Tr. at 53:16–54:24,

62:5–19, 69:15–70:3).[3]   Borden responds that while the medical search would be

permissible, any items discovered from the search would be inadmissible because, in this

case, the substance the Officers were searching for would also be evidence of the crime

for which Borden would be arrested, public intoxication.  (*Id.* at 73:10–74:17).

A.   THE FOURTH AMENDMENT AND WARRANTLESS SEARCHES

This case implicates the Fourth Amendment to the United States Constitution.  The

Fourth Amendment provides in full:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and
> seizures, shall not be violated, and no Warrants shall issue,
> but upon probable cause, supported by Oath or affirmation,
> and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.  By law, a warrantless search is presumptively unreasonable.

*United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996); *see also United States v. Aguirre*, 664

---

[3]   "Q: [W]hy did you want to look in the bag? Why did you believe that that was important? A: I needed to see if there was anything in there that he took, if there was pills." (Tr. at 53:23–25).  "Q: If the Defendant was coherent and he said, No, you can't look in my bag, but I'm not going to tell you what I took, would you still have a safety concern? A: Yeah. Yes." (*Id.* at 54:21–24).  "The Court: So just to be clear, was the reason you were looking in the backpack because you were worried that he might – – his health might be in danger because he was on something? A: Yes." (*Id.* at 69:25–70:4).

F.3d 606, 610 (5th Cir. 2011).  To protect these interests and properly limit sovereign action

on the use of searches and seizures, the Supreme Court adopted an "exclusionary rule"

requiring the suppression of evidence obtained in violation of the Fourth Amendment.

*United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); *see also*

*United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019).

"Because the ultimate touchstone of the Fourth Amendment is 'reasonableness,'

the warrant requirement is subject to certain exceptions."  *Brigham City v. Stuart*, 547 U.S.

398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006) (citation omitted).   These well-

recognized exceptions are frequently litigated.  *See Stuart*, 547 U.S. at 403, 126 S.Ct. at 1947

(need to render emergency aid); *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881,

883, 11 L.Ed.2d 777 (1964) (imminent destruction of evidence); *Chapman v. United States*,

365 U.S. 610, 615, 81 S.Ct. 776, 779, 5 L.Ed.2d 828 (1961) (hot pursuit of fleeing suspect);

*Washington v. Chrisman*, 455 U.S. 1, 5, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982) (objects in

plain view).  They are narrow and well delineated, and the government bears the burden

of establishing that the search falls within one of the exceptions.  *Aguirre*, 664 F.3d. at 610

(citation omitted).

### B.    THE EXIGENT CIRCUMSTANCES EXCEPTION

One recognized exception to the warrant requirement is "the existence of exigent

circumstances justifying immediate action."  *Linicomn v. Hill*, 902 F.3d 529, 536 (5th Cir.

2018) (citing *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130–31 (5th Cir. 2014)).  The

exigent circumstances exception applies when "the exigencies of the situation make the

needs of law enforcement so compelling that [a] warrantless search is objectively

reasonable." *Lange v. California,* 579 U.S. 486, ____, 141 S.Ct. 2011, 2017, 210 L.Ed.2d 486 (2021) (alteration in original) (quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011)).  The exception enables law enforcement officers to handle emergencies and situations presenting a "compelling need for official action and no time to secure a warrant."  *Missouri v. McNeely*, 569 U.S. 141, 149, 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013) (citation omitted); *see also Riley v. California*, 573 U.S. 373, 402, 134 S.Ct. 2473, 2494, 189 L.Ed.2d 430 (2014).  Exigent circumstances generally exist when there are "immediate safety risks to officers and others[.]"  *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001); *see also United States v. Lartigue*, 2023 WL 417646, at *1 (5th Cir. Jan. 26, 2023) (holding that police officers reasonably believed that defendant's backpack, which potentially contained an incendiary device or flammable liquid, posed a genuine danger to people in the vicinity).

The exigent circumstances exception doesn't depend on an officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. *Michigan v. Fisher*, 558 U.S. 45, 47, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009) (per curiam). Instead, the test hinges on the objective reasonableness in view of all the circumstances: "Whether exigent circumstances exist to justify a warrantless search depends on whether, given the totality of the circumstances, the search was objectively reasonable."  *Linicomn*, 902 F.3d at 536 (citing *Stuart*, 547 U.S. at 404, 126 S.Ct. at 1948).  In applying the exception, an officer must have had an "objectively reasonable basis" for their concern for public safety and must have acted reasonably.  *United States v. Toussaint*, 838 F.3d 503, 509 (5th Cir. 2016).

Given the totality of circumstances here—Borden's slurred speech and behavior, his inability to tell the Officers what substance or combination of substances he had consumed, Officer Buckelew's knowledge and experience with medical crises coupled with her belief that Borden was experiencing a medical emergency, and the need to gather information for the medic—this Court finds that the search of Borden's backpack was objectively reasonable.   The Government presented ample testimony from Officer Guzman and Buckelew who stated that the situation was a medical emergency, which required the search of Borden's backpack to determine what medication or substances he had consumed.   While the safety aspect of the exigent circumstances exception has generally been interpreted to apply to officers or to bystanders, this Court finds that in this case, the potential safety risk to the Defendant himself falls within the contours of the exception.   As such, the Court finds that the exigency of the situation justified a warrantless search of Borden's backpack, which was reasonable under the circumstances.

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress, (Dkt. No. 19), is **DENIED**.

It is SO ORDERED.

Signed on April 17, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**